Argued August 21, reversed September 18, 1978

HOWARD, *Appellant,*
*v.*
STATE ACCIDENT INSURANCE FUND,
*Respondent.*

(No. 77-317E, CA 10719)

584 P2d 325

Sam A. McKeen, Klamath Falls, argued the cause and filed the brief for appellant.

Brian L. Pocock, Associate Counsel, State Accident Insurance Fund, Legal Division, Eugene, argued the cause for respondent. On the brief were Keith R. Maloney, Chief Counsel, and James A. Blevins, Chief Trial Counsel, State Accident Insurance Fund, Legal Division, Salem, and W. D. Bates, Jr., Associate Counsel, State Accident Insurance Fund, Legal Division, Eugene.

Before Schwab, Chief Judge, and Thornton and Tanzer, Judges.

THORNTON, J.

**THORNTON, J.**

Claimant appeals from an order of the circuit court which affirmed an order of the Workers' Compensation Board (Board) denying claimant's claim for an aggravation of a prior industrial injury.

The issue is whether claimant suffered an aggravation of her prior injury, and, if so, the extent of her present disability.

The chronology of events is as follows:

Claimant suffered a compensable injury to her right knee on February 23, 1972, when she slipped and fell on ice while on her employer's premises. The claim was initially closed by a determination order on March 12, 1973, which awarded claimant 25 percent loss of the right leg.

The claim was thereafter reopened and was closed by a second determination order on August 21, 1973, which awarded claimant an additional 10 percent loss of the right leg. On October 30, 1974, a stipulated settlement raised claimant's permanent disability award to a total of 50 percent loss of the right leg.

The closing and settlement were based on reports by Dr. Vinyard, the treating orthopedist.

Subsequently, Dr. Vinyard retired from practice in the area and claimant came under the care of her family physician, Dr. Robinson.

On April 17, 1975, Dr. Robinson addresssed a letter to State Accident Insurance Fund (SAIF) advising SAIF that claimant had again fallen and injured her right knee and requested that her previous claim be reopened.

On December 11, 1975, SAIF denied claimant's claim of aggravation of the leg disability on the ground that her present difficulties were the result of the fall on April 16, 1975, rather than the original injury.

[ 207 ]

Dr. Robinson retired in June 1975 and claimant came under the care of Dr. Holford.

On January 5, 1976, Dr. Robinson wrote to SAIF as follows:

"The second paragraph of this correspondence in which you suggest that the 'new' injury is totally responsible for her problems, I feel is in error. And, while all back, neck, and extremity injuries are indeed difficult to evaluate, had she not incurred previous injury, the minor re-injury would have been asymptomatic a long time ago.

"I believe 70-80% of Orthopedic specialists would agree that her progress is such that the words aggravation of pre-existing disease (& injury) obtains."

Even prior to the stipulated settlement referred to above, claimant's leg, on at least three occasions, had given way unexpectedly causing her to fall; so claimant, on the advice of Dr. Vinyard, began keeping a record of her falls on a calendar. The first fall was recorded on April 20, 1974, and the second on April 23, 1974. Claimant had last fallen on October 2, 1974, before the settlement on October 30. These calendars were produced at the hearing. According to the testimony at the hearing, claimant recorded the following falls after the last settlement of compensation: five in 1974, nineteen in 1975, five in 1976 up to the date of the hearing March 24, 1976. In each case usually she required assistance to rise. On some occasions when she started to fall she was able to catch herself before falling.

Following the hearing and on April 5, 1976, Dr. Holford, a general practitioner, reported:

"Mrs. Howard first came under my care on Sept. 4, 1975 with multiple complaints, but I shall limit my report to those concerning the right knee.

"She gave the history of having first injured the right knee in 1964. Dr. Arthur Compton did a Howser operation on this knee in 1965. She was somewhat improved after the surgery but required medication (Butazoladin, indocin, and prednisone) at different times.

"In about 1967, she again injured the knee and sustained a fractured patella. She was off work for 2 weeks at that time, and improved.

"In Feb. 1972 the knee was again injured and she was treated conservatively by Dr. M. E. Robinson. On 4-10-73, Dr. Ronald Vinyard did a patellectomy and joint policing.

"There was some improvement thereafter, but the patient expressed the feeling that the improvement was not sufficient in her opinion to justify the procedure.

"\* \* \* \* \*

"She stated that since her last surgery she falls frequently due to the right knee 'giving way'.

"At the present time she has approximately 90° of flexion in the right knee with considerable pain. There is crepitation on extension to 180°.

"I have available Dr. Vinyard's surgery report, his report of physical examination in 1973, and his post-operative notes, which I presume are available to you.

"In his last note of 8-2-74, he stated that he felt that she was not a candidate for active employment.

"It is apparent that her symptoms have not diminished since that time and indeed may well have increased. However, since I did not see her prior to Sept. 1975, this opinion is based primarily upon the history.

"My opinion is that she is now suffering from osteoarthritis, probably secondary to a knee injury."

Claimant testified that she has "gotten worse" since the slip in October 1974. She has more difficulty standing and walking, and more persistent pain, discomfort and swelling. She also stated that her leg has gotten weaker and she has fallen more often than she did before 1974; that the falling was not occasioned by any intervening outside agency but occurred as a result of the leg failing. Her testimony was corroborated by her daughter and by her husband, a sergeant in the Klamath Falls Police Department. Her husband confirmed that there had been no continuing impairment of claimant's condition incident to any of the falls that had occurred.

[ 209 ]

Following the hearing on the instant claim, the referee reopened the claim for an aggravation and remanded it to SAIF for payment of compensation until claim closure. The Board reversed the referee and upheld SAIF's denial, stating:

"The Board, on de novo review, finds that claimant now has no greater loss of function of her right leg than she had at the time of the stipulation of October 30, 1974 which granted her an increase which resulted in a total award equal to 50% of her right leg. The Board finds that claimant still retains 50% use of her leg, therefore the Referee's order must be reversed."

Based on de novo review of this record, we conclude that the referee's order was correct.

Reversed.